The opinion of the court was delivered by
Ntoholls, C.J.
Plaintiff, alleging herself to be the owner of certain -described property, averred that defendant had unlawfully taken possession of and retained the same, claiming to be the owner, thereof; that he had been unjustly in possession of said property since before the 1st day of July, 1899, and being in bad faith, he owed petitioner rents .and revenues during the entire period of his unlawful occupancy in the past, and should be hold, also, for rents and revenues during such period .-as he might occupy said property, until dispossessed by the orders of 1he court.
Petitioner charged that the rents and revenues which defendant ■should account for and pay were at the rate, at least, of thirty-five dollars per month, during- all, the term of his unlawful occupancy, said thirty-five dollars being the proper rental and the true value of said property or occupancy thereof, per month.
She prayed for citation, and that she be adjudged sole owner of the property; that defendant be condemned to pay her rents and revenues, .at the rate of thirty-five dollars per month from the 1st of July, 1889, until such time as he should surrender the possession of the property claimed, as demanded.
Defendant answered. After pleading the general issue, he averred that he was the owner of certain property which he described. That it belonged to him by virtue of the purchase thereof made by him at a .sale made by Thomas Duffy, State Tax Collector of the Second District of New Orleans, on the 11th day of May, 1889, which said sale was made after, and pursuant to all formalities required by law, and was ■duly registered in the conveyance office book of the Parish of Orleans, which sale was passed before P. A. Rabouin, notary public, on the 25th ■day of May, 1899.
That said sale was made subject to a right of redemption of said property at any time, for the space of one year, beginning from the date •when said act was filed in the Conveyance office, by paying the price *1951 paid by the purchaser,, with twenty per cent, and costs added, but that no attempt had ever been made to redeem said property, and that after the lapse of one year the date of the registry of said act in the Conveyance office, to-wit: On the 25th day of May, 1890, defendant became the owner of said property, in fee simple, without any rights of redemption, or otherwise, on the part of any person whatsoever.
That defendant was duly placed in possession of said property by an order of the Civil District Court, rendered in the matter of Antoine Agusti vs. Mrs. Frank Welsh, No. 30,348 of the docket of said court, and that he was actually placed in possession of said property on the 9th day of June, 1890.
That owing to the indefiniteness and vagueness of the description of the property in plaintiff’s petition, defendant was unable to say whether or not she referred, in her said petition, to the same property belonging to him, as above described, but if plaintiff did refer to his property in her petition, then defendant pleaded the proceedings had in said suit No. 30,348, as res judicata against the demand of the plaintiff herein, and further averred that from the time when he was placed in possession of said property, on said 9th of June, 1890, he had been continuously, interruptedly, peaceably, and in good faith, in possession of the same, under title translative of property, and that he, therefore, pleaded the prescription of three and five years in bar of plaintiff’s aetiofi.
That in the event that the court should decree against him, then that he could not be evicted by plaintiff until she should have paid him the amount paid by him at said tax sale, as appeared upon the face of said act of purchase, to-wit: the sum of forty-seven dollars ($47.00), with interest thereon at ten per cent, per annum from the date of said Sale, to-wit May 11th, 1889, until paid, and, also, the sum of eight hundred and fifty-six and 30-100 dollars ($856.30) spent by defendant for necessary repairs and improvements to, and expenses incurred on said property since he had been in possession of the same, as shown in a detailed statement annexed to, and made part of the answer.
.He prayed to be dismissed with costs, or in the event that the court should render a decree evicting him from the whole, or any part of the property whereof he was in possession, that the court do by its judgment further provide that plaintiff should before evicting him from said property, pay to him the sum of eight hundred and fifty-six 30-100 dol *1952 lars ($856.30) amount expended by him for taxes upon said property, for necessary repairs and useful improvements made thereto, and expenses incurred thereon, and the amount paid by him as the purchase price at said tax sale, with interest upon the amount paid to-wit: Forty-seven, dollars ($47.00) with ten per cent, per annum interest thereon, from May 11th, 1889, until paid, and on each item of disbursements by him, at like rate from the date when made, until repaid to him.
Defendant having' died, his widow, Amelia Robinson (as partner in community, his succession through 'Ms said widow as administratrix) and his sole heir, Rosa, widow of Leon Auladell, were made parties defendant.
The District Court rendered judgment in favor of the plaintiff for the property claimed.
It further ordered, adjudged and decreed the tax title and deed issued to defendant, and held by Iris succession and heirs, covering the said property, executed May 11th, 1899, null and void.
It further decreed that the plaintiff have judgment against the succession of defendant, and Mrs. Rosa Augusta, widow of Leon. Auladell, sole heir of defendant, for the fruits and revenues of said property, at the rate of twenty-four dollars per month from and beginning with the 15th day of April, 1895, until delivery by defendant to plaintiff, of the said property; and with legal interest on each rent installment from the fifteenth of each month on which same fell or might fall due.
Upon defendant’s recoaaventional demand, the court decreed that the succession of the defendant and his widow and heir, recover judgment for seven dollars, with ten per cent, per annum interest from May 11th, 1889, and for the amount of the city taxes for the years 1889, 1890, 1891, 1892, 1893, 1894, 1895 and 1896, inclusive, aggregating three hundred and twenty-six dollars and thirty four cents, and for the State taxes for same years, aggregating one hundred and ten dollars and twenty cents; all of said taxes paid by defendant upon the property described, with ten per cent per annum interest upon the amount of each tax from the date of its payment; and for the further sum of four hundred and fifty dollars and forty-three cents, aggregate of repairs and improvements placed by defendant on the property described, with legal interest on the amount of each item from the date set forth in the answer. *1953 It further ordered and. decreed that' the claims and counter claims allowed in the judgment be conpensated one against the other, as far as they might go, and that if there be any balance due defendant, on the becoming final and executory of this judgment, the same be paid by the, plaintiff to the widow and heirs of defendant as a condition precedent to the taking of the property from the defendant.
Defendant appealed.
Plaintiff answered the appeal praying to be accorded the full relief prayed for in his petition.
Opinion.
Defendant in this case contends, that assuming there should be defects or flaws in the tax title under which he holds, he is protected from any attack upon it, by reason of having been in actual corporeal possession of the property for over three years. He maintains that he acquired this possession through the- execution by the sheriff of the Parish of Orleans, of a writ of possession, issued from the Civil District Court on his application for the same, and that possession was granted contradictorily with the plaintiff. That plaintiff’s action is barred by the prescription of three years provided for by 'Act No. 105 of 1894.
Defendant acting under the provision of Act No. 85 of 1888, applied for and obtained an ex parte order for a writ of possession to place him in possession of this property which he had acquired at tax sale. The sheriff’s return upon the writ is to the effect that he had seized the property described, by having the same (the seizure) recorded in the mortgage office of the city of New Orleans, and that he had.notified the occupants of the property to vacate the same within three days," and that subsequently, he had on the 9th day of June, 1890, put Augusti in full possession thereof.
The evidence shows that on the 4th day of June, 1890, the sheriff had made a demand for possession of the property from .“Mrs. E. Edwards, occupant” and “Baumgurden & Eriederich, agents”; and that Mrs Edwards who was a lessee of the property had attorned to Augusti from that time forward, most of the time to the knowledge of the present plaintiff. The evidence shows that the latter was a resident of, and in the City of New Orleans at the time of the execution of the writ, and that Baumgarden & Friedrichs, were not her agents.
Defendant seeks to give to that proceeding the force and effect of *1954 res adjudicata. The order of court referred to was not rendered contradictorily with the owner of the property, but ex parte. All that was attempted-to be done was to give notice to the owner of an order already rendered. Neither this order nor the execution of tire same barred the owner from contesting Augustus title. (Prescott vs. Payne, 44th Ann. 658; Gennella vs. Vincent, 50th Ann. 963).
Independently of any question of res judicata, the fact remains that Augusti has been in actual possession of the property ever since June, 1890, and we must give to that fact such results as the law accords to it.
These are not so sweeping and radical as the defendant claims them to be. Actual possession by a tax purchaser for three years. protects a tax purchaser by a plea in bar of an action to invalidate a tax title, but the provisions of the Act of 1874 do not bar the bringing of a petitory action by the owner of the property against the possessor of the same and bar the protection of his ownership against an adverse claim of ownership under a tax title, when the latter is so radically null as to authorize its being ignored as a title, and to justify its being collaterally attacked instead of being attacked by a direct action.
We have recently so declared in the matter of LeSeigneur vs. Bessan, 52 Ann., 187, lately referred to us for instructions by the Court of Appeals of the Third Circuit.
We are compelled, therefore, to examine the character of the title set up by the defendant. The principal ground set up against it by the plaintiff is that she was not notified in the matter of the tax sale as directed by Article 210 of the constitution of 18?9. Defendant answers that objection by saying that the property was owned by Mrs. Frank Welsh; that it was assessed in her name; that she was the tax delinquent; that in the proces- verbal of the tax collector, he declares that lie had served on each tax-payer, in person, or left, at his domicil or place of business, a printed notice etc; that Mrs. Frank Welsh being the delinquent táx-payer, this recital carries with it, necessarily, that Mrs. Frank Welsh had been notified; and the presumption of law would, in the absence of proof, be that she had been legally and correctly notified, and she would he bound by the notice whether actually received or not (See Hoyle vs. Athletic Club, 48th Ann., 883). That in Genella vs. Vincent, the facts were different, as the evidence in that case showed that the original owner of the property had long since died and had *1955 for a long while prior to his death resided in Europe); that the property was improperly assessed in her name; that as matters stood the notice referred to as given, must, under the recitals of the prooes verbal, have been given! by letter addressed to Catherine Neidergang (the deceased former owner) addressed to her at New Orleans, and, therefore, it was affirmatively shown that no legal notice had been given.
Defendant’s counsel is correct in this statement of facts, and in the absence of some special circumstance, we would presume in the absence •of proof to the contrary, that the plaintiff had been properly notified in the premises, even though she may not have received the notice. (Hoyle vs. Southern Athletic Club, 48 Ann. 883).
Sweeping recitals of the character of those shown in this case weaken the force of the deed, but do not render it null; the deed may be supported and sustained. (Rapp vs. Lowry 30 Ann. 1275; Lambert vs. Craig, 45 Ann., 1108, 1111; May vs. Witowski, 46 Ann., 1382; Genella vs. Vincent, 50 Ann. 969).
Plaintiff replies to defendant’s argument as to the presumption of notice which might have flowed in this case, under ordinary eircum.stances; that it would have been at best merely prima facie, and would have yielded to affirmative, adverse proof, but that in the Parish of Oileans the tax collector, or any one holding under a tax sale made .under Act 85 of 1888, is thrown upon proof that the personal and domi■ciliary notice had been made in any given case, when that fact is directly put at issue.
In support of that .position, counsel refers the court to the 52nd section of that act, where it declares that, “he (the tax collector) shall show due proof of the personal or domicile service, in so far as the Parish of Orleans is concerned, before he can make any sale or sales in -said Parish of Orleans.”
The sentence in question is found at the end of section 52 of the act. which section refers to notice “by publication to unknown owners.” It is meaningless in connection! with the particular matter with which it is connected by its place in the act. Counsel says we are not permitted to -expunge the sentence; that we must give it force of some kind, and that its intention, effect and meaning, is to throw the burden of proof of proper notice of intended sale; upon parties holding titles under tax -sales in the Parish of Orleans, made under the provisions of Act 85 of 1888, when the existence of that fact is put at issue; that plaintiff’s •oath that she had received no notice, imposed upon the defendant the *1956 obligation of proving', affirmatively, that the proper notice had been given, and defendant lias not met the issue, though squarely and precisely presented. (Hodding vs. City, 48 Ann., 982).
How and under what circumstances this particular sentence of the act came to be inserted in it, we are not informed, but we do not think we are at liberty to ignore it. It sometimes happens that portions oí acts are accidentally transposed from one place to another. It is our duty to make the sentence fit in somewhere, if possible, and give it effect. We gave effect to a simillar transposition found in the 25th section of Act No. 106 of 1890. We are of the opinion that under the circumstances of this case, it has not been shown that the notice required by Article 210, of the Constitution of 1819, was given to the owner of the property, and that, therefore, the judgment of the District Courf decreeing the nullity of the adjudication at tax sale, and adjudging plaintiff to be the owner of the property claimed by her herein, is correct.
.Defendant urges that in the event of our reaching this conclusion, we should reserve the (rights of both parties as to fruits and revenues, and counter- claims arising subsequent to the trial.
Defendants say in their brief: “The plaintiff coiild not recover rentals beyond date of the trial, because the defendant may have derived no revenue subsequent to that date, and through causes over which he-has no control, also because the rent value of the property may have-decreased, and also because the defendant would be entitled to claim his disbursements subsequent to that date, it is impossible for the court to render any judgment affecting the rights of either party subsequent to the date of the trial, because no evidence had been adduced by any facts, subsequent to that date.”
We think the rental value of the property, x»er month, up to- the trial of the case, was shown by .the evidence, and justifies the belief, and the judgment based on that belief, that it wild so continue to be up to the-delivery of the property. There is no intimation that any disbursements have been made on the property, since the judgment, for which the plaintiff would or could be made liable. Defendant, up to judgment, had an opportunity to advance the same or to have the same reserved.
The existence of no such claim is asserted in an application for a new trial. We see no reason for changing the judgment in this! respect, but we reserve to the defendants the right to sue for all taxes paid, disbursements made, or improvements placed on the property since the trial of the cause, to which they may be legally entitled.
*1957 The plaintiff, in her answer to the appeal, has prayed that judgment be amended so as to decree that defendant should pay rents and revenues at the rate of thirty-five dollars per mouth from the first of July, 1890, until he shall surrender possession of the property. This amendment is based upon the idea that defendant was ab initio a possessor in bad faith, hut there is nothing in the record which would go to show that such was the ease. We decline to alter the judgment in this respect. Plaintiff makes various complaints against the judgment in favor of the defendant, hut she has neither appealed, herself, nor asked any amendment in her pleadings to that portion of the judgment.
Eor the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed, with the reservation stated.