[1] This suit originally was an action in jactitation or slander of title. It involves the Northeast Quarter (NE 1/4) of the Northwest Quarter (NW 1/4) and East One-Half (E 1/2) of the Northwest Quarter (NW 1/4) of the Northwest Quarter (NW 1/4), Section 19, Township 17 North, Range 8 West, containing 60 acres, in Bienville Parish, Louisiana, actual, physical possession thereof being alleged in plaintiff. The defendants, being the surviving widow and two children of Harold W. Smith, deceased, converted the suit into a petitory action by setting up title to and ownership thereof in themselves. Therefore, being plaintiffs in such an action, the burden devolved upon them to sustain their assertion of ownership by a preponderance of the evidence. They base their title and ownership upon a tax sale of the land by the sheriff and tax collector of Bienville Parish, on August 25, 1937, unto said Harold W. Smith, for taxes of 1936, under an assessment in the name of the First National Bank of Minden, Louisiana. They aver that said bank was the record owner of the land and tax *Page 190 
debtor at date of the tax sale, and that the taxes for which it was sold were due, delinquent and unpaid at the time. They also plead the peremption of five years provided in Section 11 of Article X of the Constitution in bar of any attack against the tax sale.
Plaintiff acquired the land from said bank by warranty deed dated April 8, 1937, which, however, was not filed for record until January 24, 1938, four months after the tax sale.
From a judgment decreeing the defendants to own the property involved herein, plaintiff appealed to this court.
When defendants offered in evidence the tax deed above referred to, admissibility thereof was objected to, and, in effect, its validity as a muniment of title was attacked on several grounds, the following of which only being insisted upon and urged here, to-wit:
1. That the tax collector did not comply with Section 51 of Act No. 170 of 1898 as amended by Act No. 235 of 1928, and Act No. 194 of 1932;
2. That the tax collector did not serve on the record owner of the land the regular notice required by law prior to advertising and sale thereof for the taxes of 1936;
3. That neither the tax purchaser nor his widow and heirs has bad the land assessed to them or either of them since date of tax deed, and, therefore, abandoned title to or interest therein;
4. That the tax collector, when he offered the land for sale, did not comply with the constitutional and statutory requirements relative to and controlling of the method and manner of offering real property for sale for delinquent taxes.
[2] Other objections to the admissibility of the tax deed, we assume, have been abandoned as they are not discussed in written brief nor in oral argument of appellant's counsel. The tax deed was admitted in evidence.
[3] In this court plaintiff's counsel admits that the failure of the sheriff and tax collector to make a proces verbal of the tax sales made in 1937, as required by the mentioned Acts, did not invalidate the deed, but because of the omission the burden of proving compliance with legal requirements and formalities essential to its validity shifted to the defendants. This is a correct statement of the law as announced in recent decisions of the courts of this state. See Pill et al. v. Morgan et al.,186 La. 329, 172 So. 409; Hargrove et al. v. Davis et al., La. App., 178 So. 198; Reed v. Stinson, La. App., 188 So. 509.
However, in the present case we have reached the conclusion that the record owner was by the tax collector given the notice required by law prior to the advertisement and sale of the land. The First National Bank of Minden, Louisiana, was the record owner of the land and the tax debtor when the tax sale occurred. The land was correctly assessed to it for the year 1936 and taxes were unpaid thereunder when the sale took place.
The land involved herein is situated in Ward Four of Bienville Parish and the assessment was carried in that part of the tax roll devoted to property located in that ward. The bank also owned lands in Ward Seven of that parish that were also assessed to it for 1936.
There was introduced in evidence a receipt of the character and in the form provided by the post office department for persons to sign, who receive registered mail. This receipt is signed on one side as follows:
"Received from the Postmaster the Registered or Insured Article, the original number of which appears on the face of this Card.
First National Bank
(Signature or name of addressee)
Melvin Bell
(Signature of addressee's agent)"
On the other side of this receipt appears:
"Arcadia Louisiana Return to: H. Jordan, Sheriff and Ex- Officio Tax Collector Bienville Parish, Louisiana (Name of Sender)"
[4] The receipt is postmarked "Minden, Louisiana, June 16, 1937". It is contended by appellees that this receipt was signed by the bank's agent when the envelope *Page 191 
containing notices was delivered to her. Appellant argues that it is not shown that Melvin Bell, who signed the receipt, had authority so to do and that her action in so signing was ineffective. This contention is untenable. If the envelope that was sent by registered mail to the bank contained the written notice of delinquency of the taxes and that the property would be sold therefor within the time fixed by law unless paid, it was not necessary to the validity of the tax sale that such notice be actually received by the bank or by any one authorized by it. By so acting the tax collector literally performed his ministerial duty and this was sufficient to the legality of the sale. This principle is now well settled in this state. In Carey v. Green, 177 La. 32, 147 So. 491, 492, it is said and held: "When the marshal and tax collector of Minden sent to the plaintiff, the tax debtor, notice of delinquency 'by registered mail,' he complied with the sole requirement of the statute, and performed his whole official duty in the matter, receipt of the notice by the tax debtor not being necessary. Hoyle v. Southern Athletic Club, 48 La. Ann. 879, 19 So. 937."
Mr. Jordan, who was sheriff and tax collector of Bienville Parish in 1937, explained the mechanics of his office with respect to the sending of notices to delinquent tax debtors. The deputy whose duty it was to look after the collection of taxes, died prior to the trial of this case. Mr. Jordan testified that the above-described registry receipt "is a receipt for registered notice mailed for taxes due", and that the receipt was returned through the mail to his office. He did not himself mail notices to tax debtors but his deputies were instructed to do so after taxes were delinquent and prior to sale therefor; that it is the custom of his office in cases where the same tax debtor is assessed with land in different wards, to prepare a notice of tax delinquency, etc., under each assessment, enclose them in one envelope and send the same by registered mail to the tax debtor at his proper post office address; and that this course was followed in all cases. He was quite sure this course was followed in the present case, but, of course, could not be absolutely positive on the subject as he did not personally prepare and mail the notices.
[5] It is plausibly argued by appellees' counsel that evidently the registered letter to the bank contained two notices of tax delinquency (taxes were also delinquent under the assessment to the bank in Ward Seven), as the bank paid the taxes due on the assessment in Ward Seven after June 16, 1937. It is also of significance that on the tax roll of 1936 at the assessment to the bank in Ward Four, according to stipulation of counsel, "appears notation showing that the First National Bank, Minden, Louisiana, was notified by registered mail that said taxes were delinquent and that unless the taxes thereon were paid same would be sold for delinquent taxes, which notice was given on June 16, 1937." A strong presumption of the truth of the facts set out in this notation arises. No effort was made to show that the notation was not made by one having authority so to do. A like notation was made on the tax roll at the assessment to the bank in Ward Seven. It is well to note that June 16, 1937, was the date the registered letter was receipted for by Melvin Bell. We are morally certain the registered letter contained notices to the bank that the taxes under the two assessments were delinquent, etc., and so hold.
[6] The charge that the tax collector did not strictly follow the legal requirements when he offered the property for sale for delinquent taxes is not sustained by the testimony. The tax deed recites that the tax collector "did expose at public auction * * * the above described property (that involved in this suit) beginning with the least quantity thereof, for the satisfaction of the taxes, interest and costs due by the First National Bank of Minden, on said property for the year 1936, at which sale H.W. Smith, being the last bidder for the least quantity of said property to satisfy the said taxes, interest and costs", it was sold and adjudicated to him, etc. In support of the recitals of this tax deed, Mr. Jordan testified that in making the sale of this land and other lands at the time on *Page 192 
which taxes were due and delinquent, after reading the preamble of the advertisement he announced that as regards each tax debtor he would sell the least quantity of land assessed to him which any bidder would buy and pay therefor the taxes, interest and costs due on the whole, but that this announcement was not repeated prior to each offering. We are sure this procedure tracks the law governing sale of real property for delinquent taxes. See Section 11, Article X of the Constitution of 1921 and Section 53 of Act No. 170 of 1898.
The land was assessed to plaintiff for the years 1938 to 1943, both inclusive, and he paid taxes due under each assessment. He also paid the taxes of the year 1937. It is not contended that either H.W. Smith, the tax purchaser, while living, or defendants, after his death, was assessed with or paid taxes on the property for said years.
As regards possession of the land, it appears that plaintiff, through tenants, possessed and cultivated it to and including the year 1942. Thereafter H.W. Smith, through tenants, was in possession of and cultivated the land to the time of his death in August, 1943, and defendants have done so since his death.
[7] The tax deed vested in H.W. Smith valid title to the land subject to the right of any one having interest therein, for a period of three years, to redeem it. Redemption not having taken place, his title became indefeasible at the expiration of said redemptive period. Nothing has transpired since to divest the title thus required. The failure of Smith to have the property assessed to him during his lifetime did not to any extent impair his title thereto; nor was it materially unfavorably affected because he did not take physical possession thereof for some six years.
Appellant cites and relies upon the following cases to sustain his contention that Smith, because of the tardy exercise of his rights as owner, in the respects above mentioned, thereby, in effect, abandoned and forfeited his title to and interest in the land, to-wit: Stone v. Kimball's Heirs et al., 199 La. 240, 5 So.2d 758; Slattery v. Heilperin Leonard, 110 La. 86, 34 So. 139; Head et al. v. Howcott Land Company, Ltd., 119 La. 331, 44 So. 117.
The question of abandonment of title by the tax purchaser was advanced as a defense in the first cited case, but was rejected. There the tax sale was twelve years old. Likewise, the same question was tendered in the other two cases. In the Slattery case the tax deed was twenty years old. In passing, the court, as disclosed from the syllabus, held: "This court looks with disfavor upon a claim of ownership of land based on a tax title, where it appears the claimant, after purchase at tax sale, permitted twenty years to pass without exercising the plainest and most common, as well as important, of all the duties of ownership of property, to-wit, the payment of taxes thereon; and where it appears, or is plainly to be inferred, he only concluded to assert ownership after the land had acquired value through the completion of the levee system, to which he contributed nothing by payment of levee taxes on the land."
The facts of that case are somewhat dissimilar to those of the present case.
In the Head case the tax deed was twenty-two years old. The court therein held that because of failure on the part of the tax purchaser to exercise any semblance of ownership or possession of the land, not even paying taxes thereon for said period, the title remained open to any objection which might originally have been urged against it.
We are of the opinion that the lower court correctly decided this case. Therefore, for the reasons herein given, the judgment appealed from is affirmed; and, accordingly, defendants, Mrs. Effie Holley Smith, individually, and Betty Joe Smith and Billy Jean Smith, sole heirs of Harold W. Smith, deceased, are hereby recognized and decreed the owners, in the proportions stated in said judgment, of the land involved herein, to-wit: Northeast Quarter (NE 1/4) of Northwest Quarter (NW 1/4) and the East One-Half (E 1/2) of the Northwest Quarter (NW 1/4), of the Northwest *Page 193 
Quarter (NW 1/4), Section 19, Township 17 North, Range 8 West, situated in the Parish of Bienville, State of Louisiana; and, lastly, plaintiff is cast for all costs of court.